**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

FURMAN GILMORE

                               Petitioner,

     v.                                            No. 05-CV-1378
                                                      (DNH/DRH)

DONNA LEWIN, Superintendent,

                               Respondent.
-----------------------------------------------------------------

**APPEARANCES:**                              **OF COUNSEL:**

FURMAN GILMORE
Petitioner Pro Se
No. 02-A-3979
Butler Correctional Facility
Post Office Box 388
Route 370
Red Creek, New York 13143

HON. ANDREW M. CUOMO            LUKE MARTLAND, ESQ.
Attorney General for the State           THOMAS B. LITSKY, ESQ.
   of New York                               Assistant Attorneys General
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

      Petitioner pro se Furman Gilmore ("Gilmore") is currently an inmate in the custody

of the New York State Department of Correctional Services ("DOCS") at Butler

Correctional Facility. Gilmore was found guilty on June 25, 2002 of criminal possession of

a controlled substance in the fourth degree after a jury trial in Greene County. The trial

---

      [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

court sentenced Gilmore as a second felony offender and he is presently serving an indeterminate term of seven and one-half to fifteen years imprisonment. Gilmore now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) he was denied the effective assistance of both trial and appellate counsel, (2) he was convicted based upon insufficient evidence, and (3) there was prosecutorial misconduct. For the reasons which follow, it is recommended that the amended petition be denied.

## I. Background

On July 17, 2001, a then confidential informant, Louis Brown ("Brown"), made two controlled purchases of crack cocaine from Gilmore's residence in Catskill, New York. T. 56-57.[2]  On both occasions, Brown was under police surveillance prior and subsequent to entering the residence, wore a recording device during the transactions, and completed two affidavits following the sales. T. 60-62, 173-75, H. 10-11[3]. After the second transaction, Police Investigator Gregory Sager applied for and received a search warrant after sworn testimony was given by both Brown and Sager. H. 12-16.

On July 18, 2001, the police executed the warrant and recovered 11.21 grams of crack cocaine, a digital scale, plastic baggies, razor blades, and over $2,000 from Gilmore's bedroom. T. 64, 73-74, 79-80. Gilmore claimed that he had no knowledge as to how the drugs, scale, baggies, and razor blades appeared in his bedroom dresser, did

---

[2] "T." followed by a number refers to the pages of the trial transcript included with respondent's answer. Docket No. 12.

[3] "H." followed by a number refers to the pages of the suppression hearing transcript included with respondent's answer. Docket No. 12

2

not sell any drugs to Brown, and had consented to two police officers searching his home for a man named Mike earlier in the evening and that a friend entered his bedroom at or about the same time the police began their search.  T. 333-37.  The defense insinuated that this friend owned the narcotics and concealed the drugs in Gilmore's bedroom when the police arrived to search the home for Mike.  T. 425-26.  Gilmore was found guilty and was sentenced as indicated above.  T. 504, ST. 25.[4]

On April 1, 2004, the Appellate Division unanimously affirmed the conviction and sentence.  People v. Gilmore, 776 N.Y.S.2d 327, 328 (3d Dep't 2004).  Application for leave to appeal to the New York Court of Appeals was denied on June 24, 2004.  People v. Gilmore, 816 N.E.2d 202 (N.Y. 2004).  Gilmore also filed a writ of error coram nobis which was denied on August 23. 2005.  Docket No. 12, attachment 15.  This action followed.

---

[4] "ST." followed by a number refers to the pages of the transcript of Gilmore's sentencing included with respondent's answer.  Docket No. 12.

## II. Discussion[5]

### A. Ineffective Assistance of Counsel

Gilmore claims that he was deprived of the effective assistance of counsel because his trial counsel (a) entered into improper stipulations, (b) failed to object to the prosecutor's improper comments during summation and examination of the defendant, and (c) failed to request proper instructions to the jury. Gilmore also claims that he was deprived of the effective assistance of appellate counsel because his appellate counsel failed adequately to call trial counsel's performance into question. Am. Pet. (Docket No. 4) at 5. Respondent contends that Gilmore received effective assistance from both trial and appellate counsel.

A defendant arguing ineffective assistance of counsel must show that counsel was not functioning as constitutionally guaranteed by the Sixth Amendment. Counsel's performance must have been deficient to such an extent that the defense was prejudiced. Strickland v. Washington, 466 U.S. 668, 687 (1984). A defendant must demonstrate that counsel's errors were so serious "that there is a reasonable probability that, but for

---

[5] Respondent claims that various aspects of Gilmore's ineffective assistance of counsel and prosecutorial misconduct claims are unexhausted because Gilmore never raised them on direct appeal to the Appellate Division. Docket No. 12, attachment 15; 28 U.S.C. §§ 2254(b)(1)(A) & (c); Picard v. Connor, 404 U.S. 270, 275 (1971); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001). Even though these claims are unexhausted and Gilmore is in procedural default, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") allows the writ to be "denied on the merits, notwithstanding the failure...to exhaust...." 28 U.S.C. § 2254(b)(2). Thus, even though Gilmore's claims of (a) ineffective assistance of trial counsel for entering into improper stipulations and failure to object to the prosecution, (b) conviction upon legally insufficient evidence, and (c) prosecutorial misconduct may be procedurally precluded, they are also meritless for the reasons discussed below. Therefore, respondent's procedural default contentions need not be addressed.

4

counsel's unprofessional errors, the results of the proceeding would have been different." Id. at 694. Once this is shown, it cannot be said that the results of the proceeding are reliable. United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (citing Strickland, 466 U.S. at 687).

This is an onerous burden for a petitioner to overcome because there is "a strong presumption that counsel's conduct falls within the wide range of . . . professional assistance." Strickland, 466 U.S. at 689. The proper measure of attorney performance is an objective standard of "reasonableness under prevailing professional norms," given the totality of the circumstances. Id. at 688; Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000). Strategic choices made after investigation of the relevant law and facts are normally not subject to challenge and a reviewing court must be "highly deferential" to counsel's tactical decisions and performance. Strickland, 466 U.S. at 688. Additionally, state court findings on such matters are conclusive on the court reviewing the habeas petition if supported in the record. 28 U.S.C. § 2254(d); Summer v. Mata, 455 U.S. 591, 592 (1982).

### 1. Trial Counsel

Gilmore asserts that his trial counsel's overall performance was defective because counsel entered into improper stipulations, failed to object to improper comments made by the prosecutor, and failed to request proper jury instructions. However, a review of the record indicates that Gilmore's trial counsel properly represented him. Counsel moved to suppress the crack cocaine seized from Gilmore's apartment and, at the suppression

5

hearing, put on a defense case, and cross-examined the prosecution's witnesses. At trial, trial counsel delivered persuasive opening and closing arguments, put on a defense case, and vigorously cross-examined the prosecution's witnesses. Furthermore, Gilmore fails to show how counsel's representation prejudiced him. If anything, the record and decision from the Appellate Division indicate otherwise and provide "no support" for the ineffective assistance claim because "[c]ounsel vigorously advocated on behalf of the defendant and his success is illustrated by a verdict which sustains only one of the two charges despite evidence of two controlled buys." People v. Gilmore, 776 N.Y.S.2d at 328.

Specifically, Gilmore asserts first that his trial counsel was ineffective because he entered into improper stipulations, namely that the narcotics recovered from Brown's controlled buys and Gilmore's residence were crack cocaine. T. 140-41, 183, 207. Counsel's "decision to stipulate as part of a reasonable trial strategy . . . [seeking] to disprove the element of possession rather than the drug type" is insufficient to render counsel's performance ineffective. Lemon v. United States, 335 F.3d 1095, 1096 (8th Cir. 2003) (holding that stipulations entered into by counsel identifying a substance as crack cocaine, when in reality it was only cocaine base, were neither unreasonable nor prejudicial). Given the great deference afforded to trial counsel and the fact that trial counsel's tactical strategy to attack the element of possession resulted in Gilmore being convicted of the lesser of the two charged offenses. Therefore, it cannot be said that trial counsel's performance was unreasonable or prejudicial in this regard.

Gilmore also claims that he was denied the effective assistance of counsel because trial counsel failed to object to improper comments made by the prosecutor during

summation and cross-examination of the defendant.[6]  These claims are insufficient to sustain a finding of ineffective assistance of counsel.  The decision whether to object, to avoid calling any additional attention to potentially damaging statements, is encompassed within the category of strategic legal decision-making  United States v. Grunberger, 431 F.2d 1062, 1068-69 (2d Cir. 1970); Gatto v. Hoke, 809 F. Supp. 1030, 1039 (E.D.N.Y.) (holding that "counsel's failure to object to the prosecutor's summation represents [a] tactical decision to avoid . . . draw[ing] the jury's attention to them"), aff'd, 986 F.2d 500 (2d Cir. 1992).  This tactic was reasonable and successful and Gilmore has failed to produce any evidence illustrating prejudice or professional incompetence.

     Finally, Gilmore contends that because trial counsel failed to ask for a missing witness and circumstantial evidence charges, he was denied the effective assistance of counsel.  Docket No. 12, Attachment 13 at 21-23.  Generally, errors in state jury charges are questions of state law and are not reviewable on federal habeas corpus absent a showing that the jury charge deprived the defendant of a federal constitutional right.  See Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990).  Jury charges are not subject to review  when the trial court gives a "faulty instruction, but rather '[only when] the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973) (internal citations omitted)).  Thus, if a charge was omitted when it

---

[6] Gilmore lists seven statements made by the prosecutor in his motion for writ of error coram nobis that he contends were improper and inflammatory concerning his familiarity with crack cocaine, the veracity of his testimony, and the plausibility of his defense.  See Docket No. 12, Attachment 13 at 16-19  These statements are addressed in Section C infra.

was statutorily appropriate for the state court to deliver it, "the failure to give such a charge [is] sufficiently harmful to make the conviction unfair," and it violates due process. Id. at 124. Therefore in order to grant habeas relief, (a) the court instruction must have been required as a matter of state law, (b) the failure to give the instruction must have violated due process, and (c) habeas relief must provide an appropriate remedy. Id.

Gilmore has failed to demonstrate that the missing witness[7] and circumstantial evidence charges were warranted or that the failure to give such instructions violated his due process rights. With respect to the missing witness charge, the record indicates that the additional testimony that could have been provided by the two unidentified officers would have been cumulative given the arrest report. Additionally, trial counsel planned to call Kelly Potts, the Department of Social Services worker who responded to the Gilmore residence after the arrest, and then explained that although she was initially under subpoena, her testimony would not provide a tactical advantage to his client. T. 238. This testimony would have only added to the information elicited from the arrest report and it appears that trial counsel believed that calling the social worker was unduly cumulative. Thus, the testimony of the unidentified officer who called Potts to the Gilmore's residence would also have been cumulative.

Concerning the circumstantial evidence charge, the judge delivered extensive instructions concerning the jury's duty to convict based upon reasonable doubt and a thorough evaluation of all the evidence presented. T. 463-74. Thus, there is no indication

---

[7] To obtain a missing witness charge in New York: (1) the witness's anticipated testimony must be material to the trial; (2) the anticipated testimony will be noncumulative and favorable to the petitioner, and (3) the witness must be available to the prosecution. People v. Gonzalez, 68 N.Y.2d 424, 429 (1986).

that trial counsel's failure to request such an additional charge was an unreasonable trial strategy or that Gilmore suffered any prejudice from not having the instructions given.

Therefore, the amended petition on this ground should be denied.

### 2. Appellate Counsel

Gilmore also contends that he received ineffective assistance of appellate counsel because appellate counsel failed adequately to call trial counsel's performance into question.

To establish the ineffective assistance of appellate counsel, a petitioner must fulfill the same elements as those required for the ineffective assistance of trial counsel, namely that (a) appellate counsel's performance fell below an objective standard of professional reasonableness, and (b) but for appellate counsel's unprofessional errors, the results of the proceedings would have been different. Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying the Strickland test to a claim of ineffective assistance of appellate counsel); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (stating that although the Strickland standard was initially applied to trial counsel, it also governs challenges to appellate counsel).

Gilmore contends that his appellate counsel should have called trial counsel's performance into question. As previously discussed, this is a meritless contention because Gilmore's trial counsel zealously represented him in both the suppression hearing and at trial. Moreover, appellate counsel was not constitutionally ineffective for not raising these arguments. See Torres v. McGrath, 407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006) ("'[f]ailure to make a meritless argument does not amount to ineffective assistance'")

9

(quoting United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999)).  Finally, Gilmore makes no showing that counsel's failure to attack trial counsel's performance prejudiced his appellate proceedings or that the outcome would have been different.

Therefore, the amended petition on this ground should be denied.

### B. Insufficient Evidence

Gilmore asserts that his conviction was based on legally insufficient evidence.

The Supreme Court has "held that the Due Process Clause requires the State in criminal proceedings to prove guilt beyond a reasonable doubt."  Cupp, 414 U.S. at 147 (citing In re Winship, 397 U.S. 358 (1970)).  A defendant who claims that the evidence was not sufficient to sustain such a conviction bears a very heavy burden.  United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000).  "[T]he critical inquiry on review of the sufficiency of the evidence . . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry asks a court to determine if, "after viewing the evidence in the light most favorable to the prosecution, . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319; see also Fama v. Comm'r of Corr. Services, 235 F.3d 804, 811 (2d Cir. 2000).

Under this standard, the evidence presented at trial was more than sufficient for a rational trier of fact to conclude that the essential elements of the crime[8] were present

---

[8] In assessing the elements of the crime, a federal court is directed to look to state law.  See Fama, 235 F.3d at 811 (citing Quartararo v. Hanslamaier, 186 F.3d 91, 97 (2d Cir. 1999).  In the case at bar, the crime of criminal possession of a controlled substance in the fourth degree requires proof of the knowing and unlawful possession of "one or

10

beyond a reasonable doubt. The parties stipulated that the substance recovered from Gilmore's residence was crack cocaine in excess of one-eighth of an ounce. T. 183, 207. Additionally, the prosecution presented evidence that Gilmore constructively possessed the cocaine as it was found in his bedroom desk drawer which also housed his identification card and correspondence addressed solely to him. T. 72-77. Thus, viewing this evidence in a light most favorable to the prosecution, it is clear that Gilmore's conviction was based on legally sufficient evidence. Therefore, appellate counsel raising such a claim would be meritless.

Accordingly, the amended petition on this ground should be denied.

### C. Prosecutorial Misconduct

Gilmore also contends that the prosecution made improper reference to a prior bad act that had been earlier addressed during Gilmore's Sandoval hearing[9] and that the prosecution made numerous improper comments during summation. Docket No. 12, Attachment 13 at 16-19.

The Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial. U.S. Const. amend. XIV, § 1. Prosecutorial misconduct violates due process when it is so severe and of sufficient significance to infect the proceedings "result[ing] in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S.

---

more preparations, compounds, mixtures or substances containing a narcotic drug" having an aggregate weight of "one-eighth ounce or more." N.Y. PENAL LAW § 220.09 (2003).

[9]New York law affords a criminal defendant the right to a pretrial hearing concerning the admissibility of prior crimes and convictions to impeach a defendant's testimony at trial if he or she testifies. People v. Sandoval, 34 N.Y.2d 371 (1974).

756, 765 (1987) (citing United States v. Bagley, 473 U.S. 667, 676 (1985) (citations omitted)); Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir. 1991). In considering a claim of prosecutorial misconduct, the alleged misconduct must be placed into context and evaluated based upon its severity, the curative measures taken, and the likelihood of conviction absent its occurrence. See Blissett, 924 F.2d at 440. The more "pervasive" and "persistent" the misconduct, the greater the probability that the misconduct has prejudiced petitioner and denied him or her a "fundamentally fair trial." Id. at 441.

### 1. Sandoval Violation

The first instance of misconduct Gilmore states occurred when the prosecutor cross-examined him on his knowledge of cocaine, leading to a discussion concerning a prior misdemeanor charge which had been suppressed during Gilmore's Sandoval hearing.

The line of questioning here, even if improper, cannot be said to be so severe and pervasive as to constitute a fundamentally unfair trial. The line of questioning, while outside the scope of the Sandoval ruling, was minimal.[10] T. 348-350, 338-388. Moreover, immediately after the examination of Gilmore concluded and during the jury instructions, the judge gave a curative instruction to the jury stating that the "testimony concerning prior criminal convictions and bad acts . . . may only [be] consider[ed] . . . for purposes of assessing the credibility of [Gilmore]," and that they could not conclude that "because [Gilmore] has a criminal record, he's guilty of the crime for which he's charged here." T.

---

[10] Gilmore's counsel failed to object to the line of questioning during the trial. See note 5 supra.

391, 471-74. Furthermore, the likelihood that Gilmore would have been convicted absent this line of questioning remains still overwhelming.

Therefore, the amended petition on this ground should be denied.

### 2. Summation

Finally, Gilmore references six statements the prosecutor made in her summation commenting on Gilmore's experience with cocaine, his veracity, and the plausibility of his defense. "The Second Circuit has 'repeatedly held that final arguments of counsel may be vigorous and robust . . . .'" Campbell v. Greene, 440 F. Supp. 2d 125, 155 (N.D.N.Y. 2006) (citing United States v. Smith, 778 F.2d 925, 929 (2d Cir. 1985)). Additionally, "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002) (citing United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999)) (citations omitted).

Of the six statements the prosecutor made, five were in response to assertions made by the defense in its closing. The prosecutor was merely responding to questions raised by the summation for Gilmore. These statements, although vigorous and robust, were fair and appropriate and did not constitute egregious misconduct.[11] In connection with the sixth statement,[12] the prosecutor has acknowledged that this was an inappropriate

---

[11] Gilmore complains that in these five instances of the prosecutor used the word "I." The usage was taken out of context. The full statements conveyed to the jury were "I submit to you..." and "I suggest to you why..." T. 439-43.

[12] Prosecutor states, "[i]f you believe the testimony of Investigator Sager and Investigator DeLuca, who I am convinced are not involved in this conspiracy . . . ." T.439-

statement and has since apologized.[13]  Although the prosecution was wrong, the statement lacked severity because it was a single, isolated comment that did not rise to a level of persistence or pervasiveness constituting substantial prejudice or egregious misconduct.  Additionally, in closing the judge gave curative instructions reinforcing the fact that the jury was "the sole judge of the credibility of every witness . . . ."  T. 467.  Finally, there is substantial certainty that the likelihood of Gilmore being convicted in the absence of the summation would have remained the same.

Therefore, the amended petition on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: October 1, 2007
      Albany, New York

_____
United States Magistrate Judge

---

40.

[13] Docket No. 12, Attachment 15 at para. 18

14